UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE J. COWIE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No.  EDCV 06-1099 JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On October 12, 2006, Valerie J. Cowie ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits and Supplemental Security Income Benefits. On October 30, 2006, Michael J. Astrue ("defendant") filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On November 2, 2006, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on April 13, 2007, defendant filed an Answer to the Complaint. On June 14, 2007, the parties filed their Joint Stipulation.

1 The matter is now ready for decision.

**BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income Benefits on June 23, 2005. (Administrative Record ["AR"] at 55). The Commissioner denied plaintiff's application for benefits initially and upon reconsideration. (AR at 18-19).

On December 28, 2004, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 36). On February 6, 2006, the ALJ conducted a hearing in San Bernardino, California. (See AR at 237-58). Plaintiff appeared at the hearing with counsel and testified. (Id.). Gloria Lasoff, a vocational expert, also testified at the hearing. (See AR at 253-57).

On June 28, 2006, the ALJ issued his decision denying benefits to plaintiff. (AR at 11-16). Plaintiff filed a timely request for review of the ALJ's decision. (AR at 7). The Appeals Council denied review. (AR at 4-6).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly consider plaintiff's treating physician's opinion of disability.

2. The ALJ failed to properly consider the consultative examiner's opinion of plaintiff's functional status.

3. The ALJ failed to properly consider the state agency physician's opinion of plaintiff's functional status.

1     4.   The ALJ failed to properly consider the lay witness testimony of plaintiff's ex-husband.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

## DISCUSSION

**A.   The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or...can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential

1 process to determine whether a claimant is disabled. 20 C.F.R. §§
2 404.1520, 416.920.

3 The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the defendant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Parra, 481 F.3d at 746.

19 The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Id. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

26 ///
27 ///
28 ///

4

**B.     The ALJ's Rejection of Plaintiff's Treating Physician's Opinion of Plaintiff's Disability**

Plaintiff alleges that the ALJ failed to properly consider the opinion of plaintiff's treating physician, L. Liu, M.D., and failed to provide specific and legitimate reasons for disregarding his opinion regarding plaintiff's ability to do physical work-related activities. (Joint Stipulation at 4).

On May 12, 2005, Dr. Liu evaluated plaintiff and completed a standardized form titled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)."  (AR at 215-17).  Through the use of checklists, Dr. Liu indicated plaintiff's maximum ability to lift and carry was 20 pounds on an occasional basis, and 10 pounds on a frequent basis.  (AR at 215).  Dr. Liu indicated plaintiff's maximum ability to stand and walk, with normal breaks, during an eight-hour day was less than two hours, and that plaintiff had no limit to her ability to sit, with normal breaks, during an eight-hour day.  (AR at 215).  Dr. Liu indicated plaintiff could occasionally[1] perform the following postural activities: twist, stoop (bend), crouch, climb stairs and climb ladder.  (AR at 216).

With regard to environmental restrictions, Dr. Liu indicated that plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and noise; that plaintiff should avoid even moderate exposure to fumes, odors, dusts, gasses and poor ventilation; and that plaintiff should avoid all exposure to hazards such as machinery and heights.  (AR at 217).  When asked, on average, how often he anticipated plaintiff's impairments would cause her to be

---

[1] The Form defines "occasionally" as "from very little up to one-third of an eight hour day."  (AR at 216).

absent from work, Dr. Liu checked the box that indicated "[m]ore than three times a month." (AR at 217).

The ALJ is responsible for resolving conflicts in medical testimony. Magallanes v. Brown, 881 F.2d 747, 750 (9th Cir. 1989). In order to properly reject the opinion of a controverted treating physician, as was the case here, an ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Baston v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2003) (affirming ALJ's rejection of contradicted medical opinion because it was conclusory, in checklist form and not supported by objective evidence).

Here, the ALJ properly rejected Dr. Liu's opinion by noting, among other things, the presence of several conflicting medical opinions in the record, which themselves were based on independent clinical findings. Andrews, 53 F.3d at 1041. In his decision, the ALJ also noted that Dr. Liu offered no laboratory or clinical findings to support his assessment and, as a result, gave Dr. Liu's opinion little probative value. (AR at 15).

In determining plaintiff's residual functional capacity, the ALJ primarily relied on the opinion of Henry Lin, M.D., who performed an internal medicine consultative examination of plaintiff on August 31, 2004. (AR 135-39). The ALJ determined plaintiff's residual functional capacity after careful consideration of all of the medical evidence. Although Dr. Lin opined plaintiff could perform medium

6

work, the ALJ, opined that plaintiff had the residual functional capacity ("RFC") to perform a slightly narrowed range of light work:

> Specifically, the claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally. Out of an 8-hour period, she can stand and/or walk for 6 hours and sit for at least the remaining 2 hours and requires a sit/stand option. Nonexertional limitations include only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Mentally, she requires a low stress job, which is defined as those which do not require the worker to respond to repeated requests for information from the public or fellow employees; however, it does not preclude contact with either group.

(AR at 13). The ALJ noted that the light RFC was more restrictive than Dr. Lin's opinion and took account of the mild objective findings in the record. (AR at 14). The ALJ provided specific and legitimate reasons for reaching his conclusion regarding plaintiff's physical ability to do work-related activities and, therefore, committed no error in giving Dr. Liu's opinion little probative weight.

In addition, plaintiff argues that to the extent Dr. Liu's opinion was too ambiguous to allow for proper evaluation, the ALJ's duty to develop the record and recontact Dr. Liu was triggered. (Joint Stipulation at 5). However, the ALJ's duty to develop the record was not triggered because the record was neither ambiguous nor undeveloped. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

**C. The ALJ's Rejection of the Consultative Examiner's Opinion of Plaintiff's Functional Status**

Plaintiff alleges that the ALJ did not give the findings of the consultative psychiatric examiner proper consideration and that the ALJ failed to provide specific reasons to support his rejection of some of the consultative examiner's findings. (Joint Stipulation at 11).

Linda M. Smith, M.D., a board eligible psychiatrist, conducted a complete psychiatric evaluation of plaintiff on September 2, 2004. (AR at 142). In her summary of the examination, Dr. Smith opined plaintiff "appeared to be of at least average intelligence" and found plaintiff to be "alert and oriented in all spheres." (AR at 145). She determined that plaintiff's psychiatric prognosis was "poor to fair." (AR at 147). In her functional assessment of plaintiff, Dr. Smith opined plaintiff was

> moderately impaired in her ability to understand, remember or complete complex commands due to some problems with slowness of thinking and interference from depressed and anxious mood. She is mildly to moderately impaired in her ability to interact appropriately with supervisors, co-workers, or the public due to interference from agoraphobia and depressed mood and some slowness of thinking. She is moderately impaired in her ability to respond to change in the normal workplace setting...[and] in her ability to maintain persistence and pace in a normal workplace setting...

8

(AR at 147).

The ALJ summarized Dr. Smith's findings in his decision. (AR at 14). He noted that Dr. Smith diagnosed plaintiff with depressive disorder, NOS and panic disorder, and a Global Assessment of Functioning of 58, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (AR at 14). Accordingly, the ALJ found plaintiff's residual functional capacity to be a slightly narrowed range of light work. (AR at 13). The "slightly narrowed range" accounts for plaintiff's need for a low stress job, which is defined as those which do not require the worker to respond to repeated requests for information from the public or fellow employees. (AR at 13).

As discussed above, in order to properly reject the opinion of a controverted treating physician, an ALJ must set forth specific and legitimate reasons for doing so that are supported by substantial evidence in the record. Connett, 340 F.3d at 874. Here, the ALJ satisfied this standard by noting, among other things, the presence of conflicting medical opinions in the record, which were based on independent clinical findings. Andrews, 53 F.3d 1035 at 1041.

In his decision, the ALJ discussed the progress notes from the San Bernardino County Department of Behavioral Health. (AR at 14). The ALJ specifically noted that the progress notes did not reflect any acute mental health crisis requiring inpatient hospitalization or intensive treatment. (Id.). The ALJ noted that the May 21, 2004 treatment notes indicate plaintiff was less depressed and compliant with medicine (AR at 14; see AR at 177); the October 12, 2004 treatment notes indicate plaintiff's mood was happy and that she was coherent and oriented (AR at 14; see AR at 174); and the July 2005

treatment notes indicate plaintiff was stable on medications and had no complaints. (AR at 14; see AR at 174, 222).

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. Magallanes, 881 F. 2d at 750. Here, the ALJ provided specific and legitimate reasons for his conclusions and committed no error in giving the portions of Dr. Smith's opinion that conflicted with the progress notes little probative weight.

**D.  The ALJ's Rejection of the State Agency Physician's Opinion of Plaintiff's Functional Status**

Plaintiff alleges that the ALJ failed to properly consider the opinion of the State Agency physician, Michael Skopec, M.D., and failed to provide specific and legitimate reasons for disregarding his opinion of plaintiff's mental functional capacity. (Joint Stipulation at 15-16).

On September 15, 2004, Dr. Skopec completed a Mental Residual Functional Capacity Assessment of plaintiff. (AR at 191-94). Through the use of checklists, Dr. Skopec indicated plaintiff was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and interact appropriately with the general public. (AR at 191-92). Dr. Skopec opined that plaintiff cannot work with the public, but could sustain simple repetitive tasks with adequate pace and persistence, and adapt and relate to co-workers and supervisors. (AR at 193).

10

The ALJ did not discuss Dr. Skopec's report in his decision. (See AR at 11-16). Instead, the ALJ relied on the psychiatric consultative examination conducted by Dr. Smith and the progress notes from the San Bernardino County Department of Behavioral Health to determine plaintiff's mental functional status. (AR at 14).

While the ALJ did not discuss Dr. Skopec's report in his decision, specific and legitimate inference can be drawn from the ALJ's discussion of the findings and opinions on which the ALJ relied. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion'...[however] our cases do not require such an incantation."). In Magallanes, the Ninth Circuit held that the reviewing court can draw specific and legitimate inferences from the ALJ's discussion of the findings and opinion of the physician's testimony which the ALJ did give significant probative value. Id. In Magallanes, the ALJ summarized the facts and conflicting clinical evidence in a detailed and thorough fashion, setting forth his interpretation of the evidence and making findings. Id. The Ninth Circuit found that this discussion served as substantial evidence supporting the ALJ's decision to silently disregard the opinion of another treating physician. Id.

Here, the ALJ's discussion of and reliance on the opinion of Dr. Smith and the San Bernardino County Department of Behavioral Health progress notes serve as substantial evidence in support of the ALJ's decision to disregard Dr. Skopec's opinion. In addition, to the extent the ALJ erred by silently disregarding Dr. Skopec's report, such error was harmless. See Burch v. Barnhart, 400 F.3d 676, 679

11

(9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless). Dr. Skopec's assessment of plaintiff's mental functional capacity is consistent with the ALJ's determination that plaintiff has the residual functional capacity to perform a slightly narrowed range of light work. The ALJ specifically notes that plaintiff requires a low stress job, one that does not require plaintiff to respond to repeated requests for information from the public or fellow employees. (AR at 13). Because this is consistent with Dr. Skopec's assessment, even if the ALJ erred, the ALJ's failure to discuss Dr. Skopec's assessment constitutes harmless error.

**E.  The ALJ's Consideration of the Lay Witness Testimony of Plaintiff's Ex-Husband**

Finally, plaintiff alleges that the ALJ erred in failing to discuss the third party questionnaire completed by Charles Cowie, plaintiff's ex-husband. (Joint Stipulation at 20).

A person who is in a position to observe a claimant regularly and testifies regarding their symptoms and ability to work is a competent lay witness and an ALJ must consider his or her testimony. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). However, an ALJ does not need to meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, *25 (Sept. 27, 2005). Silent disregard of competent lay witness testimony is harmless if the Court can confidently conclude that no reasonable ALJ, when fully crediting the testimony at issue, could reach a different disability determination. Stout v. Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

///

On August 16, 2004, plaintiff's ex-husband, Charles Cowie, completed a third party questionnaire that contained a series of questions regarding plaintiff's daily activities and her functional abilities. (See AR at 100-07). Mr. Cowie's responses indicate plaintiff made simple meals, did light household chores, was able to drive a car, go grocery shopping, pay bills, count change, handle a savings account, use checkbook/money orders, and that her ability to handle money had not changed since her illnesses, injuries or conditions began. (AR at 102-04). Mr. Cowie's responses indicate plaintiff was able to follow written instructions, spoken instructions and could get along with authority figures. (AR at 105).

In addition, the questionnaire indicates plaintiff's illness, injuries or condition affected her ability to do the following: lifting, squatting, bending, standing, reaching, walking, kneeling, memory, stair-climbing, completing tasks, concentration, and getting along with others. (AR at 105). Mr. Cowie indicated plaintiff did not handle stress or changes in routine well and had a fear of being alone. (AR 106). When asked to describe any changes in her hobbies and interests since the illness, injuries, or conditions began, Mr. Cowie responded that plaintiff "watches alot more tv." (AR at 104). When asked to explain the problems plaintiff had getting along with family, friends, neighbors, or others, Mr. Cowie replied "she gets depressed and irritable." (AR at 104). Mr. Cowie also noted that plaintiff uses glasses, which were prescribed by a doctor, and would sometimes use a cane. (AR at 106).

The ALJ did not mention the questionnaire completed by Mr. Cowie in his decision. (See AR at 11-16). Even if the ALJ's failure to discuss Mr. Cowie's testimony was error, it was harmless error.

13

1  Although Mr. Cowie stated he saw plaintiff daily, the extent of his
2  interaction with her was limited to watching television together. (AR
3  at 100). It is not clear whether Mr. Cowie was in a position to fully
4  observe plaintiff's functional limitations and provide testimony
5  regarding her symptoms and her ability to work. Moreover, Mr. Cowie's
6  testimony regarding plaintiff's symptoms was not particularly
7  detailed. He did not know whether plaintiff's condition affected her
8  ability to personally care for herself, did not respond to detailed
9  questions regarding plaintiff's ability to prepare meals, and did not
10 specifically list the household chores that plaintiff was capable of
11 doing when asked to do so in the questionnaire. (AR at 101-02).
12 Thus, even if the ALJ fully credited Mr. Cowie's testimony, the Court
13 finds that no reasonable ALJ could reach a different disability
14 determination. See Stout, 454 F.3d at 1056. Substantial evidence
15 supported the ALJ's conclusion that plaintiff was not disabled. Thus,
16 the Court finds that to the extent the ALJ erred by silently
17 disregarding Mr. Cowie's testimony, such error was harmless. See
18 Burch, 400 F.3d at 679 (a decision of the ALJ will not be reversed for
19 errors that are harmless).
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

14

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 13, 2007

                                                        /s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE